**COMMONWEALTH OF PENNSYLVANIA et al., Plaintiffs,**

v.

**Rodger SEBASTIAN, President of the Township of Penn Hills Board of Commissioners, et al., Defendants.**

**Civ. A. No. 72–987.**

United States District Court,
W. D. Pennsylvania.

Dec. 1, 1972.

J. Shane Creamer, Atty. Gen., Commonwealth of Pennsylvania, Michael Louik, Thomas F. Halloran, Asst. Attys. Gen., Community Advocate Unit, Stanley M. Stein, Pittsburgh, Pa., for plaintiffs.

August C. Damian, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This is a civil rights action, the jurisdiction of which is based on 28 U.S.C. Section 1343(3) and (4) and 42 U.S.C. Sections 1981, 1983 and 1985, in which the plaintiffs seek to enjoin the defendants from engaging in unlawful racial discrimination in the recruiting, testing, and hiring of applicants for positions of police officers in Penn Hills Township.

An evidentiary hearing has been held on the plaintiffs' application for a preliminary injunction. The evidence adduced at the hearing indicates that while in 1950 and 1970 the black community represented 7.4% and 4.5%, respectively, of the total population of Penn Hills, historically, and indeed presently, the police force of Penn Hills has been, and is, all white. The evidence indicates further that blacks had over the years made application for the position of police officer—some were not advised of tests to be administered, others took the tests and failed. I find that the evidence, both statistical and circumstantial, shows past racial discrimination.

The evidence adduced at the hearing also shows, on the other hand, that at present there is no active or intentional discrimination. Indeed, the evidence clearly supports the conclusion that Penn Hills has recently engaged in efforts to eliminate any and all racially discriminatory hiring practices. Because the test which is administered to qualify applicants is inherently culturally biased, however, racial discrimination built-in to the hiring process persists. The upshot of the cultural bias in the process is that blacks are disproportionately disqualified. It was the testimony of an expert that this was true even of the most recently administered test, that of 1972. The effect, then, is *de facto* discrimination, however inactive or unintentional, and however reliably the tests measure applicants in terms of their abilities to perform the necessary functions of a police officer.

Counterbalancing this evidence is the evidence that the present police force of Penn Hills of fifty-one is dangerously shorthanded. There is evidence also that one policeman is retiring in the near future, and that, accordingly, to bring the police force to its budgeted complement of sixty, the defendants are presently in the final stages of the process of hiring ten additional policemen. To that end, the Civil Service Commission of Penn Hills has certified as eligible for employment by Penn Hills twelve qualified applicants. Of those twelve, one is black.

Notwithstanding the evident eradication of all active and intentional racially discriminatory hiring practices, the discrimination of the past, coupled with the uncontroverted evidence of the cultural bias of the qualifying test, entitles the plaintiff to at least preliminary remedial relief. See Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1964); Cas-

tro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971), reheard, 452 F.2d 327 (8th Cir. 1971), cert. denied, 406 U. S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). Therefore, weighing the benefits and burdens involved not only to the plaintiffs and the defendants, but also to the public, I conclude that Penn Hills should be permitted to hire six additional policemen immediately, provided that one of those hired is black. The issues of hiring still additional policemen and of eliminating the cultural bias from the qualifying tests without impairing their reliability, will be reserved for the resolution of the plaintiffs' request for a permanent injunction.

An appropriate Order will be entered.